1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9   KENNETH LEROY LINDAHL,

10        Plaintiff,

11        v.

12

13   CAROLYN W. COLVIN,
     Commissioner of Social Security,
14

15        Defendant.

16

No. 2:14-CV-0167-JTR

ORDER GRANTING, IN PART,
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL
PROCEEDINGS

17        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18   No. 12, 13.  Attorney Dana C. Madsen represents Kenneth Leroy Lindahl

19   (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the

20   Commissioner of Social Security (Defendant).  The parties have consented to

21   proceed before a magistrate judge.  ECF No. 17.  After reviewing the

22   administrative record and the briefs filed by the parties, the Court **GRANTS, in**

23   **part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for

24   Summary Judgment; and **REMANDS** the matter to the Commissioner for

25   additional proceedings pursuant to 42 U.S.C. § 405(g).

                              **JURISDICTION**

26

27        Plaintiff filed an applications for Disability Insurance Benefits (DIB) and

28   Supplemental Security Income (SSI) in March 2011, alleging disability since

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

October 1, 2005, due to dyslexia, dysgraphia, arm problems, lower GI problems, anxiety and headaches.  Tr. 176-191, 247.  Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) R. J. Payne held a hearing on January 17, 2013, Tr. 40-81, and issued an unfavorable decision on February 15, 2013, Tr. 22-34.  The Appeals Council denied review on April 7, 2014.  Tr. 1-6.  The ALJ's February 2013 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 2, 2014.  ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on July 27, 1967, and was 38 years old on the alleged disability onset date, October 1, 2005.  Tr. 51, 176.  Plaintiff completed the 11th grade in high school and later obtained his GED and completed two years of college coursework.  Tr. 52-53.  He reported he attended special education classes every year from first to 11th grade.  Tr. 52.  Plaintiff has past work working with dogs at a dog daycare business, doing laundry and driving a shuttle bus for a motel, performing landscaping work, doing gas piping and HVAC installation, performing work as a machine operator and material handler, working as a line worker for Purcell, performing housekeeping duties for Motel 6, and doing janitorial work.  Tr. 54-58.  He stated he stopped working in 2009 because the owner of the dog daycare business had financial difficulties and, as a result, needed to let employees go.  Tr. 54.

At the administrative hearing, Plaintiff testified he has pain, numbness and stiffness in both hands, which interferes with his dexterity.  Tr. 60-64.  He indicated he does not take prescription pain medications for the pain, because he is

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 2

unable to afford it, but will take ibuprofen when the pain is "really bad." Tr. 63. He stated he also has problems with back pain and irritable bowel syndrome, which is aggravated by stress. Tr. 65-69. Plaintiff further reported difficulties with sleep, depression and anxiety. Tr. 73-75. Plaintiff has a history of marijuana use and was reportedly arrested and incarcerated in 2003 for living with others who were selling the drug. Tr. 76-77. He stated he has since quit using marijuana. Tr. 76. Plaintiff testified he would be able to walk maybe a mile in one stretch, stand no more than about ten minutes at a time, lift 30 pounds at most, and sit for two hours before needing to get up and move around. Tr. 71-73.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If evidence supports the administrative findings, or if conflicting evidence supports a finding of either

disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2005, the alleged onset date.  Tr. 24.  At step two, the ALJ determined Plaintiff had medically determinable impairments, bilateral hand dysfunction, irritable bowel syndrome, learning disorder/attention deficit hyperactivity disorder, depression, panic attacks, and pain disorder associated with psychological factors and a general medical condition, but that Plaintiff did not have a severe physical or psychological impairment.  Tr. 24-25, 33-34.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 1, 2005, the alleged onset date, through the date of the ALJ's decision, February 15, 2013.  Tr. 34.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 4

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) not properly considering the medical opinion evidence of record; and (2) improperly discrediting Plaintiff's symptom testimony.

**DISCUSSION**

Plaintiff argues the ALJ's conclusions in this case are not supported by substantial evidence as he is more limited than as determined by the ALJ. ECF No. 12 at 8. Plaintiff specifically asserts the ALJ's step two determination that his medically determinable impairments were not severe is grounded in errors of discrediting his symptom testimony and failing to properly credit the reports of Drs. Mabee, Arnold, Chandler and Pollack. *Id*.

Step two is "a *de minimis* screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). In reviewing the claimed error, the Court must consider whether the record includes evidence of a severe impairment and, if so, whether the ALJ's response to that evidence was legally correct. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

Plaintiff has the burden of proving he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows he has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20

C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities.  An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  The medical evidence of record, as briefly outlined below, demonstrates Plaintiff has medical impairments which pass the *de minimis* threshold of step two of the sequential evaluation process.  *See Smolen*, 80 F.3d at 1290.

## A.    Medical Opinion Evidence

### 1.    Physical Impairments

Plaintiff's "Disability Report" indicates he has physical limitations, arm problems and lower gastrointestinal problems, which limit his ability to work.  Tr. 247.  At the administrative hearing, Plaintiff testified he has pain, numbness and stiffness in both hands, which interfere with his dexterity, Tr. 60-64, and has problems with back pain and irritable bowel syndrome, Tr. 65-69.

The only medical professionals of record evaluating Plaintiff's physical condition are A. Peter Weir, M.D., and state agency reviewing physician Robert Hoskins, M.D.  Plaintiff does not cite any other objective medical evidence in support of his allegation that he has severe physical impairments.

Dr. Weir examined Plaintiff on February 9, 2010.  Tr. 341-345.  Plaintiff's chief complaints at the time were problems with his arms and lower gastrointestinal problems.  Tr. 341.  Plaintiff reported constant pain and numbness in both hands and frequent loose bowel movements.  Tr. 341-342.  Dr. Weir noted Plaintiff arrived at the clinic for his appointment by motorcycle, did not exhibit pain behavior during the examination, and was limber and moved around easily without discomfort.  Tr. 344.  Dr. Weir indicated Plaintiff's hands were coarse and rough and it thus appeared Plaintiff had been engaging in some type of work-equivalent activity.  Tr. 344.  While Dr. Weir diagnosed probable carpal tunnel syndrome and irritable bowel syndrome, Dr. Weir assessed no functional

limitations.  Tr. 345.  On October 18, 2011, Dr. Hoskins reviewed the record and found that Plaintiff had no severe physical impairments.  Tr. 112, 123.

The ALJ accorded "considerable weight" to the findings of Drs. Weir and Hoskins, the only medical professionals of record assessing Plaintiff's physical condition.  Tr. 30.  As indicated above, Drs. Weir and Hoskins determined Plaintiff presented with no severe physical impairments.  The ALJ additionally noted the absence of x-ray, laboratory, or other diagnostic findings showing any pathology to explain Plaintiff's contention of debilitating pain and irritable bowel symptoms and the fact that Plaintiff had not found it necessary to pursue medical relief or resolve for his alleged extreme symptoms as further support for his step two determination regarding Plaintiff's alleged physical impairments.  Tr. 30.  Plaintiff's brief does not specifically contested the ALJ's findings regarding his physical impairments.

The ALJ's evaluation of Plaintiff's physical impairments is supported by the weight of the record evidence in this case.  Therefore, the ALJ did not err at step two of the sequential evaluation process with respect to Plaintiff's physical complaints.

### 2.    Psychological Impairments

Plaintiff's "Disability Report" indicates he also has psychological problems, including dyslexia, dysgraphia, anxiety and headaches, which limit his ability to work.  Tr. 247.  At the administrative hearing, Plaintiff reported difficulties with sleep, depression and anxiety.  Tr. 73-75.

On April 15, 2010, W. Scott Mabee, Ph.D., examined Plaintiff and completed a psychological/psychiatric evaluation form.  Tr. 354-359, 431-436.  Dr. Mabee indicated he observed symptoms of odd mannerisms, difficulty with focus and staying on task, and depression which would moderately interfere with Plaintiff's interpersonal relationships, attention and concentration.  Tr. 355.  Dr. Mabee diagnosed attention deficit/hyperactivity disorder, combined type; pain disorder associated with both psychological factors and a general medical

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 7

condition; and schizotypal personality disorder and gave Plaintiff a Global Assessment of Functioning (GAF) score of 53, indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Tr. 356.  Dr. Mabee opined that Plaintiff's ability to maintain appropriate behavior in a work setting was markedly impaired and that he had other moderate and mild functional limitations.  Tr. 357.  Dr. Mabee noted Plaintiff's profile suggested he was experiencing a high level of emotional distress and that Plaintiff had many somatic complaints which were anxiety provoking for him.  Tr. 359.

On October 8, 2010, John Arnold, Ph.D., examined Plaintiff and completed a psychological/psychiatric evaluation form.  Tr. 392-397.  Dr. Arnold indicated he observed Plaintiff was preoccupied with his physical symptoms, which would moderately impact his attendance, productivity and possibly social interaction, and that Plaintiff had concentration difficulties, which would have a mild to moderate interference with Plaintiff's accuracy of work and productivity.  Tr. 393.  Dr. Arnold diagnosed pain disorder associated with both psychological factors and a general medical condition; attention deficit/hyperactivity disorder, combined type (by history); and schizotypal personality disorder (by history) and gave Plaintiff a GAF score of 57, indicative of moderate symptoms or moderate difficulty.  Tr. 394.  Dr. Arnold opined that Plaintiff had moderate and mild functional limitations and that Plaintiff's preoccupation with his perceived physical pain would affect his social interactions, impact his ability to tolerate the stress of a regular work environment, and affect his ability to maintain appropriate behavior in a work setting.  Tr. 395.

On August 29, 2011, Samantha Chandler, Psy.D., performed a psychological diagnostic evaluation.  Tr. 420-424.  Plaintiff reported to Dr. Chandler that he suffered from dyslexia, dysgraphia, depression, ADHD and learning disabilities.  Tr. 420-421.  Dr. Chandler diagnosed pain disorder associated with both psychological factors and a general medical condition (by history, apparently in

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

remission); attention deficit/hyperactivity disorder, combined type (by history); and cannabis dependence, sustained full remission (self-reported, inconsistencies in current and previously reported information raise concerns about his credibility in regard to his substance abuse history) and gave Plaintiff a GAF score of 59, indicative of moderate symptoms or moderate difficulty.  Tr. 424.  It was noted Plaintiff was not taking medication or receiving counseling for a psychiatric condition and that evidence suggested Plaintiff could adapt and function appropriately within a work setting and sustain concentration and attention for at least a reasonable amount of time.  Tr. 424.

On December 13, 2012, Dennis R. Pollack, Ph.D., examined Plaintiff and filled out a mental medical source statement form.  Tr. 450-459.  Dr. Pollack diagnosed Learning Disorder, NOS; Attention Deficit/Hyperactivity Disorder; Pain Disorder Associated with Both Psychological Factors and General Medical Condition; Cannabis Abuse, R/O; and Personality Disorder, NOS, and gave Plaintiff a GAF score of 55.  Tr. 454-455.  On the mental medical source statement form, Dr. Pollack opined that Plaintiff had marked limitations in his abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 456-457.

Medical Expert Donna M. Veraldi, Ph.D., testified at the January 17, 2013, administrative hearing.  Tr. 43-50.  Dr. Veraldi stated the record reflected Plaintiff had some problems: perhaps a learning disorder, a non-severe attention deficit/hyperactivity disorder, a pain disorder, cannabis abuse and rule out personality disorder.  Tr. 47.  However, she opined the overall evidence of record did not indicate Plaintiff had marked limitations.  Tr. 47.  Dr. Veraldi indicated Drs. Mabee, Arnold, Pollack and Chandler each discussed impairments they

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 9

thought were concerning, but the underlying data of these medical professionals revealed that Plaintiff did not have a severe psychological impairment.  Tr. 48, 50.

The ALJ afforded "significant weight" to the findings and conclusions of Dr. Veraldi, the non-examining medical expert, Tr. 30, and rejected the opinions of the aforementioned examining medical professionals to find that Plaintiff does not have a severe psychological impairment, Tr. 30-33.

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (non-examining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a non-examining medical advisor.  *Magallanes v. Bowen*, 881 F.2d 747, 751-755 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043.  An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ specifically accorded "no weight" to the opinions of Drs. Mabee and Arnold.  Tr. 33.  The ALJ indicated Plaintiff "presented with no documented mental health treatment history," and that "their one-time DSHS evaluations appeared to lend undue reliance upon the subjective allegations of extreme

symptom severity contended by [Plaintiff] . . . in a setting where he was being evaluated for the specific purpose of determining entitlement to state general assistance benefits."  The reasons provided by the ALJ for rejecting the opinions of Drs. Mabee and Arnold are improper.  *See infra*.

First, the ALJ does not explain how Plaintiff's prior mental health treatment history would have a bearing on the evaluations of Drs. Mabee and Arnold. Whether Plaintiff had a documented mental health treatment history prior to the examinations with Drs. Mabee and Arnold is irrelevant to the ALJ's evaluation of these doctors' opinions.

Second, the record is clear that Drs. Mabee and Arnold conducted their own objective testing on exam.  Tr. 354-359, 392-397.  Both doctors indicated they personally observed symptoms related to their diagnoses and assessed limitations. Tr. 355, 393, 395.  Contrary to the ALJ's finding, Drs. Mabee and Arnold did not rely entirely on Plaintiff's symptom allegations.

Third, by definition, an examining physician does not have an ongoing relationship with a claimant; therefore, the ALJ's suggestion that the DSHS opinions are inadequate because they are the result of "one-time" examinations leads to the conclusion that the opinions of all examining medical professionals should be discarded.  By that reasoning, it would follow that the medical expert's opinion should also be discarded as she never examined Plaintiff.  *See Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009).  The ALJ's implication that the DSHS medical opinions should be rejected in part because they are based on "one-time" exams is improper.

Finally, the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.  *See Henderson*, 634 F.Supp.2d at 1191-1192; *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).  Although Dr. Mabee's and Dr. Arnold's opinions were prepared for the purpose of evaluating eligibility for DSHS benefits, the medical opinions which are the bases of the reports must be

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 11

considered by the ALJ.  *Henderson*, 634 F.Supp.2d at 1191-1192.  The ALJ's decision to reject the opinions of Drs. Mabee and Arnold on the basis that Plaintiff was being evaluated by these medical professionals for the purpose of determining entitlement to state general assistance benefits is improper.

The ALJ also assigned "no weight" to the findings of Dr. Pollack.  Tr. 33. The ALJ indicated Dr. Pollack "performed his evaluation at the request of the claimant's representative approximately one month prior to the hearing, arguably for the purpose of bolstering his evidence of disability at the hearing."  Tr. 33.

The Ninth Circuit has held the source of a referral to be relevant where there is no objective medical basis for the opinion, *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988), and where there is evidence of "actual improprieties" on the part of the doctor whose report the ALJ chooses to reject, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996).  In this case, however, neither of these factors are present. Dr. Pollack's thorough report is based on an examination which includes several tests.  His is not a mere "unsupported opinion," and there is no evidence of any "actual improprieties."  The ALJ's basis for rejecting Dr. Pollack's opinion, considering the source of referral, is not legitimate.

With respect to Dr. Chandler's opinion, the ALJ simply failed to assign any weight to the report.  The ALJ erred in this regard as well.  *See* 20 C.F.R. § 404.1527(d) (an ALJ shall "evaluate every medical opinion [he] receive[s].").

The ALJ relies entirely on the opinion of the medical expert to conclude that Plaintiff has no severe psychological impairments.  *See Henderson*, 634 F.Supp.2d at 1190 ("The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).  However, this non-examining medical expert's opinion is not supported by other evidence of record.  All of the examining medical professionals of record, as discussed above, have indicated Plaintiff suffers from psychological impairments

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 12

which caused, at a minimum, moderate limitations on Plaintiff's ability to perform work.  Plaintiff's claim of severe psychological impairments was not "groundless." *Smolen*, 80 F.3d at 1290; *Webb*, 433 F.3d at 688.  Accordingly, the ALJ erred by relying entirely on the opinion of Dr. Veraldi, a non-examining medical professional, in assessing Plaintiff's psychological functioning.

Consequently, the Court finds the ALJ erred at step two of the sequential evaluation process with respect to Plaintiff's psychological impairments.  Although the weight of the record evidence demonstrates Plaintiff suffers from severe psychological impairments, the Court is not convinced that Plaintiff's psychological impairments cause disabling limitations.  While all of the above examining medical professionals assessed functional limitations which adversely affected Plaintiff's ability to work, none of these medical professionals opined that Plaintiff would be completely incapable of performing work as a result of his impairments and limitations.  Nevertheless, Plaintiff's psychological functioning is an administrative finding, dispositive of the case, which is reserved to the Commissioner and, by delegation of authority, to the ALJ.  S.S.R. 96-5p.  It is the responsibility of the ALJ, not this Court, to assess Plaintiff's level of functioning. Further development is thus necessary for a proper determination in this case.  This matter will be remanded for additional proceedings in order for the ALJ to further develop the record, take into consideration Plaintiff's psychological impairments, and assess the limitations those impairments may have on Plaintiff's functionality.

**B.    Plaintiff's Credibility**

Plaintiff also contends the ALJ erred by improperly discrediting his symptom claims.  ECF No. 12 at 8-10.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 13

ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ determined Plaintiff was not entirely credible and provided several reasons for so finding. Tr. 26-31. The ALJ indicated the objective evidence of record and Plaintiff's own statements and testimony did not support his claim of totally disabling symptoms; the medical record showed a failure to seek treatment for the alleged symptoms; and Plaintiff's last job ended due to a slowing of the business, not because of medical concerns. Tr. 26-27. The ALJ's decision also cites to medical evidence which demonstrated Plaintiff's subjective complaints were out of proportion to objective findings, Tr. 27, Plaintiff may have been over reporting symptoms, Tr. 28, and Plaintiff may have been exaggerating his difficulties, Tr. 30. Finally, the ALJ's decision noted Plaintiff's questionable reporting concerning his history of cannabis abuse. Tr. 31.

While some of the reasons provided by the ALJ for discounting Plaintiff's testimony may be supported by the evidence of record, this matter must be remanded for additional proceedings in light of the ALJ's erroneous determination at step two of sequential evaluation process. Accordingly, on remand, the ALJ shall also reconsider Plaintiff's statements and testimony and discuss what statements, if any, are not credible and what evidence undermines those statements.

///

///

1

**CONCLUSION**

2     Plaintiff argues the ALJ's decision should be reversed and remanded for an

3  immediate award benefits.  ECF No. 12 at 15.  The Court has the discretion to

4  remand the case for additional evidence and findings or to award benefits.  *Smolen*,

5  80 F.3d at 1292.  The Court may award benefits if the record is fully developed

6  and further administrative proceedings would serve no useful purpose.  *Id*.

7  Remand for additional proceedings is appropriate when additional proceedings

8  could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In

9  this case, the Court finds that further development is necessary for a proper

10  determination to be made.

11     On remand, the ALJ shall revisit step two of the sequential evaluation

12  process and take into consideration Plaintiff's documented psychological

13  impairments and the limitations stemming from those impairments; reexamine

14  Plaintiff's statements and testimony; and assess Plaintiff's residual functional

15  capacity, taking into consideration the opinions of the medical professionals noted

16  in this Order, as well as any additional or supplemental evidence relevant to

17  Plaintiff's claim for disability benefits.  The ALJ is directed to develop the record

18  further by requiring Plaintiff to undergo a new consultative psychological

19  examination prior to a new administrative hearing and, if warranted, by eliciting

20  medical expert testimony to assist the ALJ in formulating a residual functional

21  capacity determination.  The ALJ shall obtain testimony from a vocational expert

22  and take into consideration any other evidence or testimony relevant to Plaintiff's

23  disability claim.

24     Accordingly, **IT IS ORDERED:**

25     1.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is

26  **GRANTED, in part**.

27     2.     Defendant's Motion for Summary Judgment, **ECF No. 13**, is

28  **DENIED**.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 15

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide copies to counsel. **Judgment shall be entered in favor of Plaintiff,** and the file shall be **CLOSED**.

DATED January 25, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 16